Good morning, ma'am. Proceed. May it please the Court. My name is Jose Rojo. I'm representing Mr. Jose Alfredo Vargas. And I would like to reserve five minutes for rebuttal. All right. Watch your clock. We're here for several issues that some of those issues were not raised during direct appeal of the conviction. Some of those issues were reserved or attempted to be raised by the appellant, Mr. Vargas. Three of those main issues, two of those three issues that deal directly with the conviction have to do also with sentencing. One of the main issues that I'm here to speak about is the admissibility of Frank Peneza's testimony, an expert, whose testimony was proffered before Judge Baird and whose testimony was unjustly excluded. Mr. Peneza's testimony was to explain the workings of Mr. Peneza's qualifications, by the way, are unassailable. He has spent 30 years investigating large-scale conspiracies, drug trafficking conspiracies. He's a former DEA agent with an extensive curriculum as to what he has done for DEA. He retired in 1995 after a very successful career with DEA. His testimony was proffered to help the jury assess what Mr. Vargas' participation in this so-called conspiracy the government tried to put before the jury was about. Mr. Peneza's testimony had to do with the distribution, what is required to execute this multi-hundred kilo distribution of cocaine, had to do with the attributes of the organization, the participants, the distribution cells, how is it that people are accountable for the contraband that's being distributed, how is it that the contraband is being protected by the people who send it, who sends the contraband, who receives it, what the inner workings of this operation is. Mr. Peneza's proffered testimony is on the excerpts of record, I believe it's page 51 through 58 through 63. Mr. Peneza's appeal. He could have raised this argument in the first appeal, could he not? I'm sorry? He could have raised that argument in the first appeal, right? Unfortunately, Your Honor, Mr. He failed to do so? I'm sorry? He didn't raise it, did he? Oh, he did. Mr. Vargas did file a petition to request the court to hear those arguments. The commissioner for the court refused that request. Because his counsel hadn't briefed those. Right. And he requested his counsel to do it. His counsel would not do it. I am his counsel. I was the one who did the trial at that point, Your Honor. And on the second time around, I represented him at sentencing. I tried to probe on the work. So you did the trial. Yes, I did, Your Honor. And another counsel represented him on appeal. Yes, Your Honor. And he did not make the argument you're trying to have us hear now. He did not, even though my client insisted that he did. Right. But the prior counsel didn't make it. We can't examine it now. I respectfully disagree, Your Honor. Their case law says that if the issue was not dealt with during the first appeal, nothing prevents the score. It was dealt with. The appellate commissioner said, you can't make these arguments. And that was how it was dealt with. Your Honor, the problem I have with the ruling, I think we are preventing Mr. Vargas. Mr. Vargas was prevented from not only bringing expert testimony during trial, he was also the government was allowed to bring in evidence that was excluded previously, and then he was denied a motion for speedy trial rights. He tried to raise those very legitimate issues, and they were not raised. Counsel, you're arguing the merits of the conviction. Tell me, how does this relate at all to the sentencing on the Ameline remand? It was, Your Honor, because the case is not over yet. And there's still an opportunity. There's still an opportunity to address those issues now. This Court has jurisdiction to hear those issues, and I presented in my brief the authorities that allow this Court to review the seizures. Well, may I suggest if you're going to spend all this time on issues that you previously told can't come before this Court and that go to the conviction, you will be not taking advantage of your time to discuss the issues related to the sentencing? Well, Your Honor, two of those issues that relate to the conviction relate also to sentencing. Explain it, then. Explain it. Mr. Pinesa's testimony also was proffered for sentencing. Mr. Pinesa's testimony was offered to state that, look, under this set of facts, because the government's theory is that Mr. Vargas was a supervising person for these other people, members of the conspiracy, under this set of facts, when Mr. Vargas had no record whatsoever, no ties to any mob trafficking organization, his total analysis from his phone numbers had nothing to do, no contacts with known drug dealers or distributions. He had no assets whatsoever, no money. It's impossible that this person could have been in charge of even distributions or any part of this organization. So we're now arguing aggravated role? As part of it, yes, Your Honor. And that's a discretionary standard? It is. I mean, the district, as it comes to me, if the district court finds that there was an aggravated role for this particular defendant in this sentencing, I have to only overturn that part of the court's sentence for an abuse of discretion. Not necessarily, Your Honor. Well, isn't that the standard of review on an aggravated role, abuse of discretion? No, you have to find facts before you can apply the sentencing. Well, he had facts. Purchased the front business, rented the land, hired two people at the business, directed the activity of Loza and Solash. There's facts. I mean, all I'm trying to do is find out what it is that I can do. If it's an abuse of discretion, then I have to look at what evidence there is, what facts there are that this district court could have found what he did. I've now recited him right from the district court's order. He purchased the front business. He rented the land. He hired two people at the business. He directed the activity of Loza and Solash. That may not be the way you say it, but those are the things the district court found. Fair enough. And given all the testimony that was there, him listening to it, listening to what happened, he then determined he was the front man. That is then, Your Honor, where the point is twisted. Judge Takezugi is not the one who presided over the trial. So what happens is he did not get to hear Mr. And we requested an evidentiary hearing. He said he relied on hearsay testimony given at the trial of Loza and Solash seven or eight years ago, saying point the finger to my client. And, of course, we raised hell about that. But now just a minute. When you say relied on hearsay statements, one can at sentencing rely on hearsay statements, as long as they have an indicia of reliability. And these statements were given in connection with, not given in connection with a plea agreement. They were given at trial. They were subject to cross-examination. If he'd have been there himself, he could have been, but he wasn't even around. He was flying the coop. He wasn't even around to even cross-examine. So if, in fact, they're not given a plea not to curry with the government, then it seems to me there's an indicia of reliability even for those hearsay statements. Respectfully, Your Honor, I disagree. Again, abuse of discretion. This is the problem I have with that. I did not have the opportunity to cross-examine, to look for the veracity of those statements, to see, okay, if you're saying that Mr. Vargas directed your activities, let me confront you. Let me see what activities did he direct you to do. How is it that he was working in the way that he told you this is contraband and I want you to put it in X, Y, and Z places? To begin with, the contraband was not even visible. These people, in all likelihood, didn't even know what they were handling cocaine. What would have been the range, the sentencing guidelines range, if we took out the three-level for manager, supervisor? It would have been 38 and criminal history Category 1. What would the range be? I believe it's 170-month difference, Your Honor. Does anyone have a sentencing guideline? It should be in the briefing. Frankly, as I understood it, the length of the sentence with the enhancement did not more than double the original length. The original length would have been 235, and it only went to 405. 235, yes. Right. Your Honor, between 235 and 405. And Judge Takasugi had the discretion. The range he came up with was 324 to 405. He had the discretion to sentence at 324, but he chose and he gave all the correct factors in 3553A to do it at 405. Your Honor, again, I disagree. Judge Takasugi relied on two items to give the upper term. One of those items was the supposed prosecution of Mr. Vargas in Indiana. The so-called phone call to the CIA and whatever. He says he was involved in illegal activity in Indiana. Well, you know, that case in Indiana was dismissed for lack of evidence. There was no evidence that Mr. Vargas ever dealt with dope in Indiana. The second reason, he says, is because he directed the activities of Loza and Solange. And that's when I asked the judge, let me cross-examine those witnesses. Why weren't they here? Why weren't they at trial? Well, this was an amyling remand. I think Judge Takasugi did way more than he was even required to do on an amyling remand. An amyling remand, all that requires under Combs is that he understands the scope of his review, which is to treat the guidelines as though they're advisory and not mandatory. And Judge Takasugi clearly did that. Well, Judge, I'm sorry, but Judge Takasugi was not the original sentencing judge. I realize that. And thus, thankfully, that gives a chance to show Judge Takasugi the real facts in this case. And the sad part of this matter is I feel like an accomplice. I mean, Mr. Vargas has been railroaded in the system. Like I said, he was not allowed to bring in evidence at trial. Evidence that was previously excluded was allowed in. And then his motion for a spirit trial was not respected. There was clear error here, not only that, but now on appeal, his own appellate counsel did not raise those issues. Now he said a lot of things. This court is the last resort for Mr. Vargas. This is the court who can right the wrongs that Mr. Vargas has been subject to. Again, this is a man who had no prior criminal history, no prior ties to any drug trafficking or any drug trafficking organizations. Those are the hard facts, and the government can show nothing to refute that. He got credit for that. I'm sorry? In the sentencing calculation, he got credit for criminal history level one. Your Honor, what I'm speaking about is the justness and fairness of the system, how Mr. Vargas has been treated in the system. And while we can speculate as to whether he was given credit or not for that, he was given it not per term under the assumption that he directed the activities of these two people and that he was engaged in illegal activity in Indiana. Let me ask you another question on the safety valve because I think the significance of the manager-supervisor is that it removed him from the safety valve. Did your client otherwise meet the requirements of the safety valve? Yes, he did, Your Honor. Of course, the government disputes that he was truthful at the proper session. Why would the government say that he was truthful or not? That's sort of in the government's hands. But, again, if he were to satisfy under if the court was to take off the three-rule aggravating rule enhancement, then we can go to an evidentiary hearing and let the judge decide whether my client was being truthful or not under the facts that were set at trial, the entire facts that developed during trial. This is a man's life. He's sentenced to 405 months in prison. He's not going to see a day ofóhe's almost 50 years old by now. If the court is inclined to take out those aggravating rules points, then he would qualify for the safety valve. And the dispute whether he was truthful or not during the safety valve profferó I don't even have the safety valve written statement. The government never provided that to me. They just said he did not tell the truth, and that was it. I couldn't even dispute or refute that assertion. But under those conditions, I would go and request that proffer session statement, and then I will go to Judge Takasugi and let him decide. I would also ask that the court considers other issues that were not considered by Judge Takasugi. He thought that he did not have the discretion to review Mr. Vargas' post-conviction rehabilitation. He thought that that would not be proper for consideration under the sentencing, and I disagree with Judge Takasugi under the reasons whyó under the reasons I provided in my brief, I think that he did have discretion to look at that. He's been doing nothing except good deeds while he's been incarcerated. He's been helping other inmatesóEnglish as a second language, computer courses. He has been contributing to the environment where he's at, and that was not considered by Judge Takasugi. I think that he had discretion to at least look at it and sentence him individually under 3553 and sentence him to a lesser sentence. I will reserve my time for rebuttal. Roberts. Good morning, Your Honors. May it please the Court. Kevin Rosenberg, Assistant United States Attorney for the United States. The suggestion that this defendant was railroaded is really an interesting one because I was one of the counsel that tried this case the first time, and certainly it appears that the Court is very familiar with the record. This defendant had a 13-day jury trial in which he was convicted of four very serious drug trafficking crimes, conspiracy to import cocaine, importation of cocaine, conspiracy to possess with intent to distribute cocaine, and aiding and abetting the possession with intent to distribute cocaine. This offense involved the seizure of over one ton of cocaine at LAX in 1994, where the testified street value of this cocaine was approximately $126 million. The evidence at trial showed that this was the tenth of ten shipments of spools of similar type of material, so arguably this offense involved over a billion dollars' worth of cocaine. But Judge Takasugi didn't deal with the other quantities here, but it is clear, as Your Honor points out, Judge Wardlaw, that Judge Takasugi went above and beyond the call of duty in enameling and remand. He provided the defendant with a very full opportunity to rebrief any and all sentencing issues that he so chose. In fact, there was an issue that came up that prompted Judge Takasugi to continue the sentencing one time to allow for the government to address another claim that the defendant had made kind of at the last minute. So it's very clear that Judge Takasugi was familiar with this case. If you read the sentencing transcript, he clearly took the time to understand the facts, to understand the record, and was very thoughtful and considerate in making his findings in this particular case. The numerous issues that the defendant has raised deal primarily with the sentencing. The first issue that the defendant has raised is whether or not Judge Takasugi applied the correct standard in considering the leadership role. There was a little bit of confusion at the sentencing hearing about what standard he did apply, but ultimately the government agrees that Judge Takasugi applied the preponderance of the evidence standard. And under the six-part test articulated by this court in Jordan, the government believes that Judge Takasugi applied the correct standard. Here, the sentencing enhancement of three levels did fall within the statutory maximum for the crimes alleged in the indictment. The enhanced sentence had nothing to do with the defendant's guilt or innocence of any uncharged crime. In fact, turning to the third factor, the facts that supported the enhancement were charged in part of the conspiracy. So they were well within, and actually that's the fourth factor as well, they were well within the conspiracy that was charged in the indictment for which the defendant was convicted. The increase, the number of levels of increase, was three levels. And even if the court were to consider the defendant's argument that he would have otherwise qualified for the safety valve, that would mean five levels. And that factor alone would not be dispositive. So even if it was five levels, if the court were to consider that, falling to the difference, let's say it is five levels at the worst-case scenario. That would be the difference between a offense level 36 and a 41. Those, the difference there is 136 months on the low end to 170 months on the high end. And answering your question, Judge Wardle, I hope it was answered, but had the base offense level been 38 under the guidelines, it was 235 to 293. With the three-level aggravated rule adjustment, it brought the rule, the sentencing guideline range to 324 to 405, well below a doubling of the applicable guideline range that this Court has relied upon. So the government believes that Judge Takasugi did apply the correct standard here. And turning to the facts of the aggravating rule adjustment, I think, Your Honor, Judge Smith has correctly summarized those facts. The defendant here was the person who purchased the front business, California Auto. He did rent the land and sign a lease with the Browns for that property. He admitted that he hired two individuals who worked there, Defendant Castillon and Contreras. He directed the activities of Defendants Loza and Solache, the two individuals who received the cocaine that was delivered as part of a controlled delivery. He also, the defendant, used at least one co-defendant to store some of the excess black plastic tubing that was concealing the cocaine at a storage locker. This defendant rented numerous storage lockers to store the byproducts of the  Did he put those in his own name? He did, some of those, yes, Your Honor. It seems so unusual because he may have been able to have his underlings all held liable or responsible for all of this if he hadn't put so much in his own name. That's true. And as the government said at the defendant's resentencing, it's not clear the smartest drug trafficker around because he did do a lot of things that left a trail. But I would submit that but for some drug traffickers, not being so smart, we wouldn't catch a lot of them, frankly. So the evidence was what it was. He did use his own name. He used his own name to take a van, a cargo van to Goodyear to have some unusual work done where they installed some springs. And so he did use his own name to do that. So the government believes that the court clearly did not abuse its discretion in applying this sentencing factor. It's worth noting that the probation officer recommended this factor. Judge Baird, the first time for whatever it's worth, found that that factor was applicable as well. Turning to the issue of the hearsay, initially the government would note it's really unclear from the record to what extent Judge Takasugi actually relied upon these statements. He talked about the fact in his sentencing statement at the end of the sentencing proceedings that the defendant was responsible for hiring them. But it's not clear that he relied on the hearsay at all. So even if the Court is troubled by this issue, which the government submits it should not be, because the hearsay was corroborated and was minimally reliable. Under the Huggins case, a remand would only be necessary if the challenged information was demonstrably the basis for the sentence. And here, Judge Takasugi read a panoply of reasons why he felt that this sentence was appropriate. And for that reason, a remand, the government submits, would not be necessary. As to the safety valve issue, it is within the government's discretion to advise the Court about whether or not the government believes a defendant has, in fact, qualified for the safety valve. And the government is not permitted to engage in discrimination or in some unconstitutional motive or purpose to that end. The defense has made no suggestion whatsoever throughout any of its papers that the government has behaved in that fashion here. The defendant simply maintains that he's innocent. The jury rejected that position. The government rejected that position at the proffer. And the government simply isn't required to accept his version of the truth as part of that proffer. One additional factual matter that I need to correct. The Indiana case was not dismissed for lack of evidence. The record is clear on that point. Looking to government's excerpts 929, that's my declaration that I submitted in connection with the defendant's resentencing. And in that declaration, I talked about my conversation with the Indiana prosecutor. And the reason that Indiana case was dismissed is because they simply felt that the defendant had been sentenced to life by Judge Baird, and they had limited resources and didn't believe it was an appropriate use of their resources to retry this defendant when he had already been facing a life sentence. So their defendant is continuing to reclaim and reassert that there was an evidence problem where there clearly was none. In fact, in the Indiana case, the defendant was charged with having over 150 kilograms of cocaine available. He was indicted as being a source of marijuana, of 800 pounds of marijuana, 10 pounds of methamphetamine. And he had that. He had advised a government informant that he had that cocaine ready and available for sale. Given what the defendant did in the underlying case here, his involvement in the conspiracy to import cocaine by the ton into this country, and given the fact that seven years after he resurfaces, he's now again involved in large-scale narcotics trafficking, even if the court were to think that it was appropriate to consider post-offense rehabilitation, the government submits that Judge Takasugi did not for this defendant. That sentence is appropriate to protect the people of this country from the defendant. It's appropriate to deter other folks from engaging in this kind of drug activity. It's also worth noting that there are other sentencing enhancements that Judge Takasugi didn't even address. There was a plus two that the government argued and Judge Baer agreed with based on the enormous quantities of cocaine that were involved here. Had the court found that, that would have put the defendant up at level 43, which was life. At the original sentencing, the government sought an enhancement for obstruction of justice because the defendant lied. When he testified, Judge Baer essentially stopped counting and just decided that if enough was enough, she didn't need to reach that issue. But there are other factors at play here. The only other issues that I'll touch on briefly, Your Honor, is the defendant raises an issue about the pre-sentence report. And I would note for the record that the government believes it's clear there was only one pre-sentence report. There is no other one in the record, is there? No, Your Honor. There isn't. There isn't any other. There are no other pre-sentence reports. There was one. The defendant had that pre-sentence report in its addenda for about three years prior to the resentencing in this particular case. And as to the perceived injustice that the defendant is suffering, he is certainly free to raise a 2255 motion alleging that his appellate counsel was ineffective. And if he chooses to do that, there will be a factual record that would be developed, at which time if it reaches this Court, this Court would be in a position to provide him with relief if it feels that relief is appropriate. Unless there are any questions from the Court, the government would submit. None. All right. Thank you. Your Honor, I do take issue with this case. The Indiana case, for example, was not brought up, was not indicted until the time right before we went to trial in this case. It was not a priority over Indiana. It was a priority to make my client, to force my client to a plea. In fact, in the middle of trial, I was offered a 15-year deal from the government to punish my client for 15 years. My client did not accept the deal. Now, the thing is, what makes this case so different for the government now versus the case that they had in the middle of trial? Why is it that they insist now on a 30-plus year sentence when they themselves said, you know what, we'll offer you a 15-year deal? The difference is that, Your Honor, they were caught in many discrepancies, to say the least. And one of them is the Indiana case, again, was dismissed after this conviction, even before the last appeal was resolved in this case. That case, Judge Takasugi, in fact, asked Mr. Rosenberg to contact the other case. And the only thing that we got in return was Mr. Rosenberg's conversation with the prosecutor. We didn't get any documents. My client asked the court in Indiana, and that's on the record, in our access to the record. My client moved the court in Indiana to give me a reason why you're dismissing this case. I want to know, because he knew what was going on in Indiana. They had no evidence against them. The deal in Indiana was a case that was never prosecuted because of that. Judge Takasugi, nevertheless, used that to enhance his sentence. Mr. Vargas did not come into a conversation with Mr. Rosenberg and Mr. Dugdale and the prosecutors to say, I am innocent. Mr. Vargas went in there, and I was with him, to say, what happened? What happened? And if the jury decided I am not innocent, that's fine. I'll live with that. But this is exactly what happened. That's the same story Mr. Vargas told you when he was in trial. And it's the same facts that he put forth before the prosecutor during those, I think, were two proversations. So for the government not to say that he was perjuring himself, he never used the word I am innocent. Mr. Vargas said, this is what happened. This is who I met. This is how the transactions took place. This is how I rented the place. What we know and what is lacking from the record is we know that Mr. Vargas was not We know that the cocaine was transported in sealed containers. They were cylinder-shaped containers that were completely sealed. They had to be broken. And we have videotapes of the trial where the agents had to break them apart in order to come up with the bricks of cocaine. They were discovered through x-rays. Now we're imputing that knowledge to those four people who were caught in transporting the cocaine. It is not that they knew they were transporting cocaine. They knew what was in there. And that knowledge is attributed to Mr. Vargas. Mr. Vargas directed the activities of these two people. Mr. Vargas did not tell them to go in and store cocaine. Mr. Vargas was not even present at the business. How he knew? This contraband is not $100,000, $200,000. This is highly valuable. How he knew? How much and what type of contraband was there in those pools? Believe you me, that's not given to a person with no assets, with no money whatsoever. How he knew? He never even stepped foot on that business. The fact of the matter is he was not even present there when all this. And this is unrefuted testimony that he was not even present directing the activities of the people who were in charge of the place. We know that the former owner left his brother to work in that place. And we know that Mr. Vargas was not present after the control delivery took place either. And there was surveillance. There were agents looking after who was going where, who was going who. Mr. Vargas was never to be seen. He was not even around. There were contacts with people from the shipping company. And his name never came up. Nobody could identify Mr. Vargas because he was not the person in charge of those shipments. What we know, what we have is a list, a laundry list of lacking corroborating evidence. We know that Mr. Vargas had no money. No fingerprints were found of Mr. Vargas to belong in any of those places where they found the contraband or whatever. We know that he had no money. We know that he had nothing with actual evidence that would say that Mr. Vargas was here directing this cocaine operation. That was brought up in trial. And unfortunately, Judge Takasugi was not aware of these facts. He was not in trial. He was not at the trial at the time. It was Judge Baird.  I do have a reason to say what I said earlier, that Mr. Vargas has been very loyal to the system. And I do request that this Court right the wrongs that have been done to Mr. Vargas. Respectfully, I submit. All right. Thank you so much, counsel. Thank you very much for your argument, sir. Rosen, I'm sorry. U.S. v. Vargas is submitted.
judges: Wardlaw, Bea, Smith